# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

_____
                                                            :
LAWHQ, LLC, AND THOMAS ALFORD,           :
               Plaintiffs           :
                                                            :
         v.                             :     No. 1:20-00033-MSM-PAS
                                                            :
DAVID D. CURTIN, in his official capacity   :
as Chief Disciplinary Counsel for the          :
Disciplinary Board of the Supreme Court of  :
Rhode Island,                                          :
               Defendant.           :
_____ :


## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

      This lawsuit is part of a nationwide litigation effort undertaken by LawHQ, LLC, and its founder, Thomas Alvord.  LawHQ is a Utah limited liability corporation practicing law, or at least allowed to practice law, in nearly all 50 states under its trade name "LawHQ."  That trade name is at the core of the dispute before the Court.

      Rhode Island maintains adherence to Rule 7.5(a) of the Rules of Professional Conduct which prohibits the use of trade names by law firms.  It states in relevant part,

> [a] lawyer shall not use a firm name, letterhead or other professional designation that violates Rule 7.1. A firm name used by a lawyer in private practice shall include the full or last name of one or more principal attorneys actively practicing law on behalf of the law firm except, if otherwise lawful, law firms may use as, or continue to include

in, its name the name or names of one or more of its deceased or retired attorneys or of a predecessor firm in a continuing line of succession ....

R.I. Sup. Ct. Rules, Art. V, Rules of Prof. Conduct, Rule 7.5(a). The Rule, if enforced against the plaintiffs, would preclude LawHQ from practicing under its trade name in Rhode Island. The plaintiffs plan to extend their nationwide practice to Rhode Island but maintain that the prospect of enforcement of Rule 7.5 precludes them from doing so. They have therefore sued for injunctive relief against the person who enforces the Rules of Professional Conduct: David D. Curtin, Chief Disciplinary Counsel. Mr. Curtin has brought a Motion to Dismiss (ECF No. 11) pursuant to Fed. R. Civ. P. 12(b)(1). By this Memorandum and Order, and for the reasons below, the Court DENIES that Motion.

## JURISDICTION AND STANDARD OF REVIEW

The plaintiffs claim that Rule 7.5 violates their First Amendment rights by unconstitutionally restricting their commercial speech. Jurisdiction is therefore appropriate under 28 U.S.C.A. §§ 1331 and 1343(a)(3). The plaintiffs have demonstrated a clear First Amendment interest. In *Bates v. State Bar of Arizona*, the Supreme Court held that lawyers and law firms have a protected First Amendment interest in commercial speech. 433 U.S. 350, 383 (1977).[1] Here

---

[1] Commercial speech is protected by the First Amendment but is subject to regulation. *See Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 367 (2002). If the commercial speech "concerns unlawful activity or is misleading" then a regulation can be constitutionally permissible. *Id.* If however, "the speech concerns lawful activity and is not misleading," then the governmental interest must be substantial to survive a constitutional challenge. *Id.* (citing *Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 566, 65 L. Ed. 2d 341, 100 S. Ct. 2343 (1980)). If the governmental interest is substantial, then the court must determine whether the

plaintiffs allege that Rule 7.5(a)[2] of the Rhode Island Rules of Professional Conduct is "more extensive than is necessary to serve the state's claimed interest in preventing misleading advertising" and is therefore unconstitutional on its face, in violation of the First Amendment to the United States Constitution. (ECF No. 1 ¶13).   The defendant, as "the party seeking to uphold a restriction on commercial speech [will carry] the burden of justifying it" when the merits are addressed by the court. *Thompson,* 535 U.S. at 373 (citing *Edenfield v. Fane,* 507 U.S.761, 770 (1993)) (internal citations omitted).

There are two bases asserted by the defendant in the Motion to Dismiss. The first is jurisdictional, invoking the twin justiciability doctrines of "standing" and

---

regulation "directly advances the governmental interest" and ask, "whether it is not more extensive than is necessary to serve that interest." *Id.* (internal quotations omitted).

[2]According to the plaintiffs, the idea surrounding Rule 7.5(a) dates to the ABA committee decision to prohibit the use of "trade name[s]" being "used to disguise the practitioner or his partnership" back in the late 1920s. (ECF No. 1 at 3) (quoting *Report of the Special Committee,* 52 ABA Rep. 495, 496 (1928)). This Rule then developed into Canon 33 that stated, when "select[ing the] use of a firm name, no false, misleading, assumed or trade name should be used." *Id.* at 4 (quoting *Canons of Prof'l Ethics*, Canon 33 (1937)). Rhode Island, and almost every other state adopted Canon 33. *Id.* at 5. It was not until *Bates v. State Bar of Arizona*, 433 U.S. 350 (1977), in which the Supreme Court ruled "that the First Amendment Protects truthful and non-misleading advertising by lawyers and law firms," that campaigns began against Model Rule 7.5(a). *Id.* at 7 (citing *Bates*, 433 U.S. at 383-84). Following *Bates,* the ABA eliminated many "lawyer-advertising restrictions" and added a comment to Rule 7.5 that explained that a law firm can use a trade name "so long as it is not misleading." *Id.* at 8. In 2019, however, the ABA abolished Rule 7.5 in its entirety, and since then almost every state has modified its Model Rules to eliminate the "ban on law-firm trade names." *Id.* at 9.  *See infra at n.* 3.

3

"ripeness," both elements of the "case or controversy" requirement to federal court jurisdiction arising from Article III of the United States Constitution. *Reddy v. Foster,* 845 F.3d 493, 499 (1st Cir. 2017). The second is Mr. Curtin's demurrer that he is not the appropriate person against whom the lawsuit should proceed.

## THE WANING VIABILITY OF RULE 7.5

While the merits are not before the court,[3] and the Motion to Dismiss is purely procedural, a brief discussion of Rule 7.5 is instructive. According to the Complaint, the origin of the Rule was the American Bar Association's ("ABA") adopting it in the 1920s to address a fear that trade names would "disguise the practitioner or his partnership." (ECF No. 1 at 3 (quoting *Report of the Special Committee,* 52 ABA Rep. 495, 496 (1928)). The Rule then supported Canon 33 which barred "false, misleading, assumed or trade name[s]." When "select[ing the] use of a firm name, no false, misleading, assumed or trade name should be used." *Id.* at 4 (quoting *Cannons of Prof'l Ethics*, Canon 33 (1937)).

For many years, Rhode Island omitted the trade name ban from its Rules. R.I. Sup. Ct. Rules, Art. V, Rules of Prof. Conduct, Rule 7.5(a) (2007). A comment to the rule explained that "a trade name such as the 'ABC Legal Clinic'" was "acceptable" under the rule "so long as it is not misleading." *Id.* The "use of such names to designate law firms," the comment noted, "has proven a useful means of identification." *Id.* In 2015, however, the prohibition was re-adopted and remains in

---

[3] For a discussion of the merits, *see Michel v. Bare,* 230 F. Supp. 2d 1147 (D. Nev. 2002) (finding trade name prohibition for law firms unconstitutional).

effect today.  Rhode Island Rules of Prof'l Conduct 7.5(a) & cmt. (2015).  In 1983, the ABA eliminated many "lawyer advertising restrictions," *see* ABA Formal Op. 84-351 (1984), while adding a comment to Rule 7.5 explaining that a law firm may use a trade name "so long as it is not misleading." (ECF No. 1, ¶¶26, 27).  In 2019, the ABA eliminated Rule 7.5 entirely.   ABA Standing Committee on Ethics and Prof'l Responsibility, *Lawyer Advertising Rules for the 21st Century* 1 (2019), http://bit.ly/2NqQp54.

LawHQ maintains it is a national law firm, specializing in "protecting consumers from the proliferation of telephone spam under the Telephone Consumer Protection Act." (ECF No. 1, ¶4).  Following the ABA elimination of the ban, it mounted a campaign against the enforcement of the trade name ban in those states that had not voluntarily dropped it.  At this writing, it appears that Rhode Island will soon stand alone in maintaining Rule 7.5.[4]

---

[4] Since the start of 2020, the plaintiffs have filed lawsuits in what were then nine states that prohibited the use of trade names for law firms (Georgia, Indiana, Mississippi, Nebraska, New Jersey, New York, Ohio, Rhode Island, and Texas). Thomas Alvord, *More Than A Name: Why LawHQ Is Suing 9 State Bars*, LawHQ BLOG (Jan. 23, 2020), LawHQ.com/blog/more-than-a-name-why-LawHQ-is-suing-9-state-bars. In seven of those states (all but Rhode Island and Texas) the lawsuits were voluntarily dismissed on representations that those states amended their model rules to eliminate the trade name ban for law firms.  *LawHQ, LLC v. Centinaro*, No. 3:20-cv-00782-MAS-LHG, ECF No. 17 (D.N.J. Oct. 8, 2020); *LawHQ, LLC v. Caligiuri,* No. 2:20-cv-00361-SDM-KAJ, ECF No. 21 (S.D. Ohio July 21, 2020);   *LawHQ, LLC v. Weber,* No. 4:20-cv-02011-RFR-SMB, ECF No. 16 (D. Neb. Apr. 23, 2020); *LawHQ, LLC v. Kilgore,* No. 3:20-cv-00045-HTW-LRA, ECF No. 12 (S.D. Miss. Oct. 8, 2020); *LawHQ, LLC v. Dopico,* No. 1:20-cv-00616-LAK, ECF No. 46 (S.D.N.Y. July 15, 2020); *LawHQ, LLC v. Frederick,* No. C:EF-cv-FFHHI-LMM (N.D. Ga. Apr. 22, 2020); *LawHQ LLC v. Witte*, No. 1:20-cv-00264-SEB-DLP, ECF No.33 (S.D. Ind. Dec. 9, 2020).  In Texas, as of this writing, a proposal by the Committee on Disciplinary Rules and Referenda to eliminate the blanket prohibition on trade names is pending a state

## DISCUSSION

LawHQ employs lawyers admitted outside Utah to practice under its firm name.  It contends that it "intends" to do precisely that in Rhode Island but has postponed doing that because of its fear of prosecution.  Mr. Curtin, for his part, contends that an "intention" is not sufficient and that LawHQ's failure to take such concrete steps as hiring a Rhode Island lawyer and renting office space deprives it of standing to press the lawsuit and makes its claim "not ripe" for adjudication.  (ECF No. 11.)

Standing and ripeness are related doctrines.  *Project Veritas Action Fund v. Conley,* 270 F. Supp. 3d 337, 340 (D. Mass. 2017).  *Both* are essential components of subject-matter jurisdiction.  *Reddy,* 885 F.3d at 500.  Both doctrines are intended to keep the courts out of hypothetical controversies where injury may be speculative and unlikely.

> Much as standing doctrine seeks to keep federal courts out of disputes involving conjectural or hypothetical injuries, the Supreme Court has reinforced that ripeness doctrine seeks to prevent the adjudication of claims relating to 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'

*Id.* At 500-501, quoting *Texas v. United States,* 523 U.S. 296, 300 (1998).  As the First Circuit has explained, "standing" focuses on *who* may bring an action, while

---

bar referendum ordered by the Texas Supreme Court. *LawHQ, LLC v. Seana Wiling,* No. 1:20-cv-00085-RP, ECF No. 24 (Status Report) (W.D. TexDec 21, 2020). *See In re Committee on Attorney Advertising,* 61 A.3d 930, 937 (N.J. 2013) ("vast majority of other states have adopted R[ules of] P[rofessional] C[onduct] to allow for the use of trade names by law firms").

"ripeness" looks to *when* the action may be brought. *Rhode Island Assn. of Realtors, Inc. v. Whitehouse,* 199 F.3d 26, 33 (1st Cir. 1999).

In order "[t]o establish . . . standing, a plaintiff must satisfy three elements: 'a concrete and particularized injury in fact, a causal connection that permits tracing the claimed injury to the defendant's actions, and a likelihood that prevailing in the action will afford some redress for the injury.'" *Franklin Cal. Tax-Free Trust v. Puerto Rico,* 85 F. Supp. 3d 577, 593-94 (D.P.R. 2015) (quoting *Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council,* 589 F.3d 458, 467 (1st Cir. 2009)). Two of those requirements – a causal connection and redress if successful – cannot be disputed here: if the plaintiffs have suffered an injury by being precluded from practicing law in Rhode Island, it would be because of the enforcement of Rule 7.5. And equally certain is the fact that the jettisoning of Rule 7.5 would cure that injury. The problem for the plaintiffs here is the first criterion: whether they have suffered an injury that is concrete enough to support an action for declaratory and injunctive relief.

The "concrete" injury element is met only if it has already happened, or if there is an adequate threat of an actual or imminent injury. *A.C. v. Raimondo*, No. 18-645-WES, 2020 WL 6042105, at *9 (D.R.I. Oct. 13, 2020) (citing *Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38, 47 (1st Cir. 2020)). In a pre-enforcement case, as this is, that credible fear of prosecution is where the doctrines of "standing" and "ripeness" overlap, the plaintiff must satisfy each doctrine. If there is no credible fear of prosecution, the plaintiff lacks the likelihood of injury that would give it standing. And if fear of prosecution is not reasonable, the lawsuit may be

premature.  *Id.*  In this Circuit a court is to presume the threat of prosecution is credible, absent compelling evidence to the contrary.  *Whitehouse,* 199 F.3d at 31. The bar to show a credible threat of prosecution is "extremely low."  *Mangual v. Rotger-Sabata,* 317 F.3d 45, 57 (1st Cir. 2003).  While the plaintiff has the burden of persuasion in a pre-enforcement lawsuit, *Blum v. Holder,* 744 F.3d 790, 795 (1st Cir. 2014), all reasonable inferences are drawn in his favor when ruling on a motion to dismiss.

<u>Standing</u>

To show standing, the plaintiffs need not show that they have already been harmed by the challenged proscription.  They need not violate the statute to gain standing.  *Mangual,* 317 F.3d at 56.  It is enough to show that they have "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute, and there exists a credible threat of prosecution."  *Id.* at 56-57.  There must be a "plausible showing of true intent."  *Project Veritas Action Fund*, 270 F. Supp. 3d at 343.

*Mangual* is instructive here.  It involved a newspaper reporter with a history of investigating public corruption who challenged a criminal libel statute as unconstitutionally infringing on his First Amendment rights.  He alleged that he feared that embarking on his intended investigation would lead to prosecution.   In *Mangual,* the court looked at his history of investigative reporting and previous coverage of corruption to determine that his intent was sincere and therefore sufficient to support standing.  Here, we have a law firm that has "made good" on its

8

intention to practice nationally by bringing lawsuits in nine states that had adhered to trade name bans. *See Jacobs v. Florida Bar,* 50 F.3d 901, 904 (11th Cir. 1995) (the fact that the plaintiffs had advertised in the past in a way that would violate the new rules showed the sincerity of their intention to do so in the future). According to the Complaint, which must be credited at this stage, LawHQ indeed practices nationally and there is no reason to doubt the sincerity of its intention to enter the Rhode Island legal marketplace.

LawHQ stands in a very different position from that of Project Veritas Action Fund, which was held not to have shown a "plausible showing of true intent." *Project Veritas Action Fund,* 270 F. Supp. 3d at 343. In that case, Project Veritas sued to enjoin enforcement of the Massachusetts wiretap statute, contending that its prohibition of secret recordings impeded its ability to engage in an undercover journalistic investigation of sanctuary cities and the immigration policies of Boston's public officials. As here, they had taken few planning steps, but it was not that fact which was dispositive. What doomed Project Veritas' standing was its failure to allege "plans, steps, expenditure of funds, *or past activities* that plausibly suggest a present intent to launch a prohibited investigation." *Id.* at 343. Mr. Curtin argues that standing is absent because LawHQ has not taken "concrete steps" toward the practice of law in Rhode Island. But looking to "concrete steps" is simply another way to demonstrate that the intention is real, that it is more than whim or wishful thinking. As the First Circuit held in *Project Veritas,* a record of similar past activity can serve the same purpose. *See Whitehouse,* 199 F.3d at 34 (standing requirement

9

met where association simply announced its desire to recruit new members from a list of newly licensed realtors in the face of a statute that prohibited such solicitation).

Besides showing a sincere present intent to do what the law proscribes, a party demonstrating standing must also show there is a "credible threat of prosecution" if he or she were to violate the statute. LawHQ proffers that it sought a declaration a year ago from Mr. Curtin that it would *not* be prosecuted if it tried to practice under its trade name and could not obtain such an assurance. In addition, the fact that Rhode Island re-adopted the rule in 2015 compels an inference that the state is serious about prohibiting trade name practice. Mr. Curtin has shown no reason, much less a compelling one, to believe the threat is not credible.

Ripeness

Like standing, ripeness also demands a showing of a credible fear of prosecution. LawHQ has shown a credible fear of prosecution as noted above. Should LawHQ open its doors under its firm name, there is a "real threat of prosecution." *Mangual,* 317 F.3d at 60 ("ripeness" question is whether an injury is sufficiently likely to happen as to warrant judicial review). In *New Hampshire Right to Life Political Action Comm. V. Gardner,* 99 F.3d 8 (1st Cir. 1996), the court held that to rebut the presumption that a threat is credible, the government would have to show that the statute was "moribund" or that it had no intention of enforcing it. The state Attorney General's refusal to commit to non-prosecution belied that conclusion. *Id.* at 16-17. The same is true here. The next step for the plaintiff, if the controversy were not considered ripe now, would be to hire a Rhode Island attorney and hang out a shingle.

It is unnecessary that the plaintiffs "place themselves between the Scylla of intentionally flouting state law and the Charybdis of forgoing . . . constitutionally protected activity." *Mangual*, 317 F.3d at 57 (quoting *Steffel v. Thompson*, 415 U.S. 452, 462, 39 L.Ed.2d 505, 94 S. Ct. 1209 (1974)) (internal quotations omitted). Justiciability does not require a step over the precipice:  it is enough that LawHQ stand, as it does now, at the edge.

## Proper Party

Mr. Curtin contends that he is not properly named as the defendant here.  He argues that he is not responsible for attorney discipline.  It is of course correct that both the Disciplinary Board and the Rhode Island Supreme Court play the primary decision-making roles in the ultimate disciplining of attorneys for violations of the Rules of Professional Responsibility.  But Mr. Curtin enforces the Rules by prosecuting violations. R.I. Sup.Ct. Rules, Art. III, Rule 5(b)(3).  As the prosecuting authority, he is an appropriate defendant.  *See Michel v. Bare,* 230 F. Supp. 2d 1147 (D. Nev. 2002) (Bar Counsel sued to enjoin enforcement of trade name ban).  When a statute is challenged as unconstitutional, the proper defendants are "the government officials whose role it is to administer and enforce it."  *Mangual,* 317 F.3d at 57. *See also New Hampshire Right to Life Political Action Comm.,* 99 F.3d at 11 (proper to sue Secretary of State where that office was charged with monitoring and reporting suspected improprieties to the Attorney General); *Reddy,* 845 F.3d at 499 (Attorney General and County Attorneys sued to enjoin enforcement).  Thus, Mr. Curtin is the appropriate official.

## CONCLUSION

The defendant's Motion to Dismiss (ECF No. 11) is DENIED.

IT IS SO ORDERED:

Mary S. McElroy,
United States District Judge

Date:  January 20, 2021